AB/201500669

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| UNITED STATES OF AMERICA | : | Hon. |
| --- | --- | --- |
| | : | |
| v. | : | Criminal No. 20- |
| | : | |
| CHRISTINE MYERS | : | |
| | : | 18 U.S.C. § 1349 |

# INFORMATION

The defendant having waived in open court prosecution by Indictment, the United States Attorney for the District of New Jersey charges:

1.  Unless otherwise indicated, at all times relevant to this Information:

    a.  Marketing Company-1 was a marketing company organized under the laws of New Jersey.

    b.  Defendant CHRISTINE MYERS was a resident of New Jersey and one of the owners of Marketing Company-1.

## Compounding

    c.  In general, "compounding" was a practice in which a licensed pharmacist, or a licensed physician, combined, mixed, or altered ingredients of a drug to create a medication tailored to the needs of an individual patient. Pharmacies engaged in the practice of compounding were referred to as "compounding pharmacies."

    d.  Compounded drugs were not approved by the Food and Drug Administration ("FDA"); that is, the FDA did not verify the safety, potency,

effectiveness, or manufacturing quality of compounded drugs.

e. Generally, compounded drugs were prescribed by a physician when an FDA-approved drug did not meet the health needs of a particular patient. For example, if a patient was allergic to a specific ingredient in an FDA-approved medication, such as a dye or preservative, a compounded drug could be prepared excluding the substance that triggered the allergic reaction. Compounded drugs also could be prescribed when a patient could not consume a medication by traditional means, such as an elderly patient or child who could not swallow an FDA-approved pill and needed the drug in a liquid form that was not otherwise available.

## The Compounding Fraud Scheme

2. Starting at least as early as in or around 2013 and continuing through in or around August 2017, companies marketing various compounded medications (the "marketing companies") and certain compounding pharmacies (the "compounding pharmacies") began targeting individuals covered under health insurance plans with prescription benefits that paid for various compounded medications (the "paying health plans") because the compounded medications could be billed to paying health plans at substantially higher rates than an FDA-approved drug therapeutic equivalent.

3. Marketing companies recruited and paid individuals as "sales representatives" to either: (1) obtain compounded medications, regardless of medical necessity, for themselves ("self-prescriptions") or family members through their paying health plans; or (2) recruit others with paying health plans

2

to obtain compounded medications, regardless of medical necessity.

4. For the marketing companies to profit, they either had direct relationships with certain compounding pharmacies, or affiliated themselves with other marketing companies that had relationships, either directly or indirectly, with other compounding pharmacies. Through these various relationships, a marketing company agreed to direct prescriptions to certain compounding pharmacies, and in exchange, the compounding pharmacy would pay the marketing company a percentage of the reimbursement amount for each successfully adjudicated claim referred by that marketing company and its sales representatives.

5. Marketing companies and compounding pharmacies encouraged their sales representatives to recruit other sales representatives, or bring other individuals into the scheme "under" them. Any individual recruited would be considered a sales representative's "downline." The marketing companies and/or compounding pharmacies paid sales representatives a portion of the reimbursement amount they received for: (1) each prescription the sales representative directly caused to be filled, including self-prescriptions and family member prescriptions; and (2) for each prescription attributable to those in the sales representative's downline.

6. From in or around February 2015 through in or around February 2017, in the District of New Jersey and elsewhere, the defendant,

**CHRISTINE MYERS,**

did knowingly and willfully conspire and agree with others to execute, and

attempt to execute, a scheme and artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, any of the money owned by, and under the custody and control of, a health care benefit program in connection with the delivery of or payment for health care benefits, items and services, contrary to Title 18, United States Code, Section 1347.

### Object of the Conspiracy

7. It was an object of the conspiracy for defendant CHRISTINE MYERS and others to profit from the submission of false and fraudulent insurance claims for medically unnecessary compounded prescription medications to various paying health plans.

### Manner and Means of the Conspiracy

8. It was a part of the conspiracy that defendant CHRISTINE MYERS recruited "sales representatives" to sell various compounded medications, such as, but not limited to, pain creams, scar creams, wound creams, and metabolic supplements/vitamins, for Marketing Company-1 in conjunction with various compounding pharmacies (collectively, the "Compounding Pharmacies").

9. It was further a part of the conspiracy that the Compounding Pharmacies obtained payment from various paying health plans, which constituted "health care benefit programs" that affected commerce as defined in 18 U.S.C. § 24(b), for the compounded medications the sales representatives sold on behalf of Marketing Company-1. The Compounding Pharmacies paid Marketing Company-1 a percentage of the adjudication or reimbursement

amount for each prescription for compounded medication each sales representative caused to be billed to a paying health plan, regardless of medical necessity. As one of the owners of Marketing Company-1, defendant CHRISTINE MYERS kept a portion of the payment and provided a "commission" payment to the relevant sales representative.

10. It was further a part of the conspiracy that in order to induce the paying health plans to pay for the compounded medications, defendant CHRISTINE MYERS and others made it appear as if the compounded medications were medically necessary, when in fact they were not.

11. It was further a part of the conspiracy that the paying health plans were billed for medically unnecessary compounded medications.

12. As a result of defendant CHRISTINE MYERS's participation in the scheme to bill for medically unnecessary compounded medications, from in or around February 2015 through in or around February 2017, defendant CHRISTINE MYERS caused a loss to the paying health plans of at least $8,800,000.

All in violation of Title 18, United States Code, Section 1349.

## **FORFEITURE ALLEGATION**

1. The allegations contained in Paragraphs 1 through 12 of this Information are hereby re-alleged and incorporated by reference for the purpose of alleging forfeiture, pursuant to 18 U.S.C. § 982(a)(7).

2. Upon conviction of the offense of conspiracy to commit a Federal health care fraud offense, contrary to 18 U.S.C. § 1347, in violation of 18 U.S.C. § 1349, as alleged in this Information, the defendant CHRISTINE MYERS shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), all property, real or personal, obtained by the defendant that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of such offense.

### Substitute Assets Provision

3. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third person;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be subdivided without difficulty;

the United States shall be entitled to forfeiture of substitute property, pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b).

*[signature]*
CRAIG CARPENITO
United States Attorney

CASE NUMBER: <u>20-          </u>

# United States District Court
# District of New Jersey

**UNITED STATES OF AMERICA**

v.

**CHRISTINE MYERS**

## INFORMATION FOR

**18 U.S.C. § 1349**

**CRAIG CARPENITO**
*UNITED STATES ATTORNEY*
*NEWARK, NEW JERSEY*

Adam Baker
*ASSISTANT U.S. ATTORNEY*
*973-645-2858*